## Guy H. BISHOP, Plaintiff

### v.

## C & P TRUCKING COMPANY, INC., et al., Defendants.

### Civ. A. No. 92–AR–1798–M.

United States District Court,
N.D. Alabama,
Middle Division.

Aug. 12, 1993.

Clarence F. Rhea, Rhea Boyd & Rhea, Gadsden, AL, for Guy H. Bishop.

James E. Turnbach, Turnbach & Warren, PC, Gadsden, AL, for C & P Trucking Company, Inc., and Madlene Cleveland.

### NOTICE AND ORDER

ACKER, District Judge.

This notice is being entered today, and will hereafter be entered, in every civil case (except Social Security cases and bankruptcy appeals) in the Middle Division and in the Eastern Division of this court and assigned to the undersigned.

Neither the United States Courthouse in Gadsden, Alabama (which houses the Middle Division), nor the United States Courthouse in Anniston, Alabama (which houses the Eastern Division), has an operator and magnetometer through which persons must pass on their way to the second floor courtroom in which the district judge sits. Neither of said courthouses has a deputy United States Marshal on station. The federal courthouse in Anniston does have a court security officer usually present, but he is assigned to the bankruptcy judge and travels with the bankruptcy judge to his other duty stations. He is not at the front door of the courthouse even when he is present at the bankruptcy courtroom. In other words, there is nothing in these two courthouses which approximates the security that is provided to the undersigned, his staff, the lawyers, the witnesses, the parties and the public in the Hugo L. Black United States Courthouse in Birmingham, Alabama, where the undersigned has his chambers.

Everybody with good sense knows that there is no valid reason for the Northern

District of Alabama to have eight federal courthouses, which is more than any federal district in the entire United States. There may have been an excuse for this numerosity and dispersion years ago when the roads were dirt and rutted and when judges, witnesses, lawyers and jurors were traveling in buggies or on trains, but that excuse disappeared with the advent of the interstate highway system. The existence of six basically unsecure courthouses in the Northern District of Alabama can now be understood, if at all, only as a political anachronism maintained as an expensive pork barrel hangover in the present era of budgetary constraints, which unfortunately involve cutting out items much more important to the administration of justice than turning on the lights, heat and air conditioning in unsecure courthouses as close to Birmingham as 60 miles (or less for Jasper) by freeway, and more important than paying for travel and lodging for a judge, his staff and jurors. In the opinion of the undersigned, the only federal courthouse besides the Birmingham courthouse that can be justified in today's Northern District of Alabama is the courthouse in Huntsville.

The undersigned recognizes that he is without the power to order that this dangerous waste of the taxpayers' money be stopped by the closing of redundant satellite courthouses. The statutory commands even of a profligate Congress must be obeyed. But Congress has not provided how often court must be held in Gadsden and Anniston, and the undersigned does not have to unduly expose himself, his staff, federal jurors, witnesses, lawyers and litigants to the risks of trying cases in Gadsden and Anniston as frequently as he has done in the past. Not only is the undersigned still reminded of the tragic death of his friend, Hon. Robert S. Vance, and of other violent acts against the courts, but well remembers a scary incident that occurred while the undersigned himself was on the bench in Gadsden during the trial of a civil case. Despite the fact that the undersigned has over the years become increasingly aware of mounting security problems in our society as they relate to courtrooms, it was not until the undersigned received the memorandum of August 9, 1993, from the United States Marshal in regard to the shooting and bombing incident at the Topeka, Kansas federal courthouse, that the undersigned decided to take action. That memo says:

> The building where this incident occurred is a federal building (floors 1 thru 3) and courthouse (4th floor), very much like our facilities in *Anniston,* Decatur, Florence, *Gadsden,* Jasper and Tuscaloosa.
>
> I strongly recommend that because of the security features within the Federal Courthouse in Birmingham, that all criminal trials and sentencings be conducted in Birmingham.
>
> Knowing there is no way to prevent an assault if a person is determined to do so, the best line of defense is the first line (the front door/first floor).

(emphasis supplied). The undersigned represents the United States District Court for the Northern District of Alabama on its court security committee, and in light of the memo of August 9, 1993, finally feels obligated to react in the only way he can find so as to limit the exposure of this court to violence.

The undersigned hereby notifies all litigants in the above-entitled matter that they can either consent to a trial of their case in Birmingham or should anticipate that the periodic visits by the undersigned to Gadsden and Anniston for a trial docket will hereinafter be once every two years in each location instead of twice a year in each location as has been the custom in the past. Because Gadsden and Anniston are close to each other, the undersigned respectfully asks that parties consent to try Gadsden cases in Anniston if, because of witness location, the parties cannot consent to a trial in Birmingham. It is hereby ORDERED that the parties shall within seven (7) calendar days before the pre-trial conference notify the court of their willingness or of their unwillingness to try their case in Birmingham. Otherwise, they shall be deemed to have consented to a trial in Birmingham.

If and when the undersigned is assigned to a division which sits in Florence, Tuscaloosa, Decatur or Jasper, a similar order will issue.